**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CIVIL ACTION NO.  5:13-CV-153-RLV-DCK**

| | |
|---|---|
| **SPRING M. PITTS,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | )    <u>**MEMORANDUM AND**</u> |
| **v.** | )    <u>**RECOMMENDATION**</u> |
| | ) |
| **CAROLYN W. COLVIN,** | ) |
| **Acting Commissioner of Social Security,** | ) |
| | ) |
| **Defendant.** | ) |
| | ) |

**THIS MATTER IS BEFORE THE COURT** on Plaintiff's "Motion For Judgment On The Pleadings"  (Document No. 9) and Defendant's "Motion For Summary Judgment" (Document No. 15).  This case has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. §636(b)(1)(B).   After careful consideration of the written arguments, the administrative record, and applicable authority, the undersigned will respectfully recommend that Plaintiff's "Motion For Judgment On The Pleadings" be <u>denied</u>;  that Defendant's "Motion For Summary Judgment" be <u>granted</u>;  and that the Commissioner's decision be <u>affirmed</u>.

## I.      BACKGROUND

Plaintiff Spring M. Pitts ("Plaintiff"), through counsel, seeks judicial review of an unfavorable administrative decision on her applications for disability benefits.  (Document No. 1).  On or about  September 23, 2010, Plaintiff filed applications for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 405, and for supplemental security income under Title XVI of the Social Security Act, 42 U.S.C. § 1383, alleging an inability to work due to a disabling condition beginning April 1, 1991. (Transcript of the Record of Proceedings ("Tr.") 22, 174-180, 181-185).  The Commissioner of

Social Security (the "Commissioner" or "Defendant") denied Plaintiff's application initially on February 14, 2011, and again after reconsideration on May 26, 2011. (Tr. 22, 115-119, 120-123, 124-128). In its "Notice of Reconsideration," the Social Security Administration ("SSA") included the following explanation of its decision:

> The medical evidence shows that your condition is not severe enough to be considered disabling. You are able to think, act in your own interest, communicate, handle your own affairs, and adjust to ordinary emotional stresses without significant difficulties. We realize that your condition keeps you from doing some types of work, but it does not keep you from doing less demanding work. Based on your age, education, and past work experience, you can do other work. It has been decided, therefore, that you are not disabled according to the Social Security Act.

(Tr. 124).

Plaintiff filed a timely written request for a hearing on July 20, 2011. (Tr. 22, 129-130). On February 13, 2013, Plaintiff appeared and testified at a hearing before Administrative Law Judge Todd D. Jacobson ("ALJ"). (Tr. 22, 38-59). In addition, Kathryn H. Mooney, a vocational expert ("VE"), and Russell Becker, Plaintiff's attorney, appeared at the hearing. Id. "At the hearing, the claimant's attorney requested that the claim be adjudicated as a Title XVI only." (Tr. 22, 54).

The ALJ issued an unfavorable decision on March 28, 2013, denying Plaintiff's claim. (Tr. 19-32). Plaintiff filed a request for review of the ALJ's decision on May 21, 2013, which was denied by the Appeals Council on August 10, 2013. (Tr. 4-7, 16-18). The March 28, 2013 ALJ decision thus became the final decision of the Commissioner when the Appeals Council denied Plaintiff's review request. (Tr. 4).

Plaintiff's "Complaint" seeking a reversal of the ALJ's determination was filed in this Court on November 12, 2013. (Document No. 1). On March 6, 2014, the undersigned was

assigned to this case as the referral magistrate judge. Plaintiff's "Motion For Judgment On The Pleadings" (Document No. 9) and "Plaintiff's Memorandum In Support Of Motion For Judgment On The Pleadings" (Document No. 10) were filed May 9, 2014;  and Defendant's "Motion For Summary Judgment" (Document No. 15) and "Memorandum In Support Of The Commissioner's Motion For Summary Judgment" (Document No. 16) were filed August 21, 2014.  "Plaintiff's Response To Defendant's Memorandum In Support Of Motion For Judgment On The Pleadings" (Document No. 18) was filed on August 29, 2014.

The pending motions are ripe for disposition, and therefore, a memorandum and recommendation to the Honorable Richard L. Voorhees is now appropriate.

## II.    STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to:   (1) whether substantial evidence supports the Commissioner's decision;  and (2) whether the Commissioner applied the correct legal standards. Richardson v. Perales, 402 U.S. 389, 390 (1971);   Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

The Fourth Circuit has made clear that it is not for a reviewing court to re-weigh the evidence or to substitute its judgment for that of the Commissioner – so long as that decision is supported by substantial evidence.  Hays, 907 F.2d at 1456 (4th Cir. 1990);  see also, Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986);  Hancock v. Astrue, 657 F.3d 470, 472 (4th Cir. 2012).  "Substantial evidence has been defined as 'more than a scintilla and [it] must do more than create a suspicion of the existence of a fact to be established.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting Perales, 402 U.S. at 401).

Ultimately, it is the duty of the Commissioner, not the courts, to make findings of fact and to resolve conflicts in the evidence. Hays, 907 F.2d at 1456; King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979) ("This court does not find facts or try the case de novo when reviewing disability determinations."); Seacrist v. Weinberger, 538 F.2d 1054, 1056-57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistences in the medical evidence, and that it is the claimant who bears the risk of nonpersuasion."). Indeed, so long as the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court disagrees with the final outcome. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

## III.    DISCUSSION

The question before the ALJ was whether Plaintiff was under a "disability" as that term of art is defined for Social Security purposes, at any time between the date of Plaintiff's application for disability benefits, and the date of the ALJ's decision.[1]  (Tr. 22, 31-32).  To establish entitlement to benefits, Plaintiff has the burden of proving that she was disabled within the meaning of the Social Security Act.  Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

The Social Security Administration has established a five-step sequential evaluation process for determining if a person is disabled.  20 C.F.R. § 404.1520(a).  The five steps are:

(1)    whether claimant is engaged in substantial gainful activity - if yes, not disabled;

(2)    whether claimant has a severe medically determinable physical or mental impairment, or combination of

---

[1]  Under the Social Security Act, 42 U.S.C. § 301, the term "disability" is defined as an: inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.  Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (quoting 42 U.S.C. § 423(d)(1)(A)).

4

impairments that meet the duration requirement in § 404.1509 - if no, not disabled;

(3)     whether claimant has an impairment or combination of impairments that meets or medically equals one of the listings in appendix 1, and meets the duration requirement - if yes, disabled;

(4)     whether claimant has the residual functional capacity ("RFC") to perform her/his past relevant work - if yes, not disabled;  and

(5)     whether considering claimant's RFC, age, education, and work experience he/she can make an adjustment to other work - if yes, not disabled.

20 C.F.R. § 404.1520(a)(4)(i-v).

The burden of production and proof rests with the claimant during the first four steps;  if claimant is able to carry this burden, then the burden shifts to the Commissioner at the fifth step to show that work the claimant could perform is available in the nation economy.  Pass, 65 F.3d at 1203.  In this case, the ALJ determined at the fifth step that Plaintiff was not disabled.  (Tr. 31).

First, the ALJ determined that Plaintiff had not engaged in any substantial gainful activity since September 16, 2010, the application date.  (Tr. 24).  At the second step, the ALJ found that seizure disorder, mood disorder, anxiety disorder, and fibromyalgia were severe impairments.[2] (Tr. 24).  At the third step, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 C.F.R. 404, Subpart P, Appendix 1.  (Tr. 24-27).

_____

[2]  The determination at the second step as to whether an impairment is "severe" under the regulations is a *de minimis* test, intended to weed out clearly unmeritorious claims at an early stage.  See Bowen v. Yuckert, 482 U.S. 137 (1987).

Next, the ALJ assessed Plaintiff's RFC and found that she retained the capacity to perform light work activity:

> Except she is limited to frequent handling and fingering bilaterally; and can never climb ladders; with no concentrated exposure to hazards such as moving machinery or unprotected heights; that is unskilled with no commercial driving.

(Tr. 27). In making his finding, the ALJ specifically stated that he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSRs 96-4p and 96-7p." Id. The ALJ further opined that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." (Tr. 28).

At the fourth step, the ALJ found that Plaintiff has no past relevant work. (Tr. 30). At the fifth and final step, the ALJ concluded based on the testimony of the VE and "considering the claimant's age, education, work experience, and residual functional capacity" that jobs existed in significant numbers in the national economy that Plaintiff could perform. (Tr. 31). Specifically, the VE testified that according to the factors given by the ALJ, occupations claimant could perform included photo copier, mail clerk, and cafeteria attendant. (Tr. 31). Therefore, the ALJ concluded that Plaintiff was not under a "disability," as defined by the Social Security Act, at any time between September 16, 2010, and the date of his decision, March 28, 2013. (Tr. 22, 31-32).

Plaintiff on appeal to this Court makes the following assignments of error: (1) improper evaluation of Plaintiff's epilepsy under Disability Listing 11.02; and (2) improper assessment of

credibility and the resulting RFC. (Document No. 10, p.1). The undersigned will discuss each of these contentions in turn.

**A. Arguments**

In her first assignment of error, Plaintiff contends that the ALJ improperly evaluated her epilepsy under Disability Listing 11.02. (Document No. 10, pp.4-5). Specifically, Plaintiff argues that the ALJ failed to "apply the criteria of Listing 11.02 to the facts of Ms. Pitts' case." (Document No. 10, p.4). Plaintiff asserts that her convulsive epilepsy "persisted despite 3 months of prescribed treatment, and Ms. Pitts continues to suffer from seizure despite years of treatment on different medications." (Document No. 10, p.4). Therefore, Plaintiff contends that the ALJ was required to "specifically apply the pertinent legal requirements of the listing to the record evidence to ascertain whether or not the listing was met." Id.

The undersigned observes that the Code of Federal Regulations ("CFR") Listing Of Impairments includes the following pertinent guidance:

> A. Epilepsy. In epilepsy, regardless of etiology degree of impairment will be determined according to type, frequency, duration, and sequelae of seizures. . . .
>
> Under 11.02 and 11.03, the criteria can be applied only if the impairment persists despite the fact that the individual is following prescribed antiepileptic treatment. . . .
>
> 11.02 Epilepsy--convulsive epilepsy, (grand mal or psychomotor), documented by detailed description of a typical seizure pattern, including all associated phenomena; occurring more frequently than once a month in spite of at least 3 months of prescribed treatment.
>
> A. Daytime episodes (loss of consciousness and convulsive seizures) or
>
> B. Nocturnal episodes manifesting residuals which interfere significantly with activity during the day.

20 CFR Pt. 404, Supt. P., App. 1, §§ 11.00-11.02.

As noted above, the ALJ determined that Plaintiff's seizure disorder was a severe impairment, but held that none of Plaintiff's impairments met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (Tr. 24). The ALJ decision specifically stated that "[l]istings 12.04, 12.08 and 11.02 were considered." Id. Moreover, the ALJ opined that his finding was "consistent with that of the state agency expert medical consultant who found that no listing is met or equaled…." Id.

Plaintiff now argues that the ALJ failed to explicitly discuss the relevant listing and to compare the facts of the case with the requirements of the listing. (Document No. 10, p.4) (citing Tr. 24). Noting the recent Fourth Circuit decision in Radford v. Colvin, Plaintiff contends that "an ALJ cannot summarily conclude that a claimant does not meet a listing because such 'insufficient legal analysis makes it impossible for a reviewing court to evaluate whether substantial evidence supports the ALJ's findings.'" Id. (quoting Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013)). Additionally, Plaintiff contends that the ALJ's reliance on "the findings of the State Agency non-examining consultants" does not fulfill his obligation to analyze the listing. (Document No. 10, pp.4-5) (citing Tr. 24 and Radford, 734 F.3d at 295-96).

Plaintiff asserts that although it is not necessary to show she meets the listing to have the case remanded, she contends the evidence here indicates she does meet Listing 11.02. (Document No. 10, p.5). Plaintiff alleges that the following facts in the record support the requirements of Listing 11.02:

> Ms. Pitts' seizures became more frequent in 2010, several months before she applied for disability benefits. (Tr 604-05). Her grand mal seizures have been witnessed by medical professionals, with descriptions of involuntary shaking, her eyes rolling up into her head and loss of consciousness. (Tr 191; 591-93; 625-30). Several treatment notes in the record reflect that she was experiencing

these seizures more than once per month as required by the listing. In April of 2010, she was experiencing about 2 seizures per week. (Tr 597-99). In July of 2010, she was experiencing seizures daily. (Tr 594-96). In August of 2010, she was noted to experience 2 to 3 seizures per week. (Tr 591-93). In 2011, her neurologist noted that her seizures were under "poor control." (Tr 652-62). By June of 2012, she was experiencing seizures almost daily. (Tr 649). . . . Her seizures have persisted despite medication compliance for over 2 years. *Infra*.

(Document No. 10, p.5). Therefore, Plaintiff concludes that this case should be remanded to reach a "proper evaluation listing under Listing 11.02." (Document No. 10, p.5).

Plaintiff also concludes that remand is warranted because the ALJ's credibility assessment is not supported by substantial evidence. (Document No. 10, pp.6-7). The crux of Plaintiff's argument is that the record does not support the ALJ's finding that Plaintiff had control of her seizures when compliant with her medications. (Document No. 10, p.6).

Defendant first contends that Plaintiff mischaracterizes the ALJ's decision. (Document No. 16, p.4). According to Defendant, "the ALJ explicitly discusses substantial evidence demonstrating that Plaintiff did not sustain her burden of establishing the following elements of Listing 11.02: (1) seizures occurring more frequently than once a month; (2) seizures occurring in spite of at least three months of prescribed treatment; and (3) nocturnal episodes manifesting residuals which interfere significantly with activity during the day." Id. (citing Tr. 25, 26, 28-29). Defendant then notes the ALJ's citation to the following facts:

- In July 2010, Plaintiff reported that her last seizure had occurred two months ago (Tr. 29, referring to Tr. 565).

- In October 2010, Plaintiff reported that it had been a month since her last seizure (Tr. 29, referring to Tr. 561).

- In August 2011, Plaintiff's family reported that her seizures occurred "every month or two" (Tr. 29, referring to Tr. 627).

9

In addition, Plaintiff reported in April 2011 that she did not think she had experienced any seizures recently (Tr. 607).

With respect to the element of Listing 11.02 requiring frequent seizures occurring in spite of at least three months of prescribed treatment, the ALJ emphasizes the following facts:

- In February 2010, Plaintiff reported that Neurontin was helping to the point that she was not having seizures (Tr. 28, referring to Tr. 600).

- In July 2010, Plaintiff reported that her seizures were controlled (Tr. 29, referring to Tr. 567). At that time, Plaintiff was taking Neurontin, Keppra, and Klonopin (Tr. 29, referring to Tr. 567).

- In June 2012, Plaintiff alleged that her seizures were uncontrolled (Tr. 29, referring to Tr. 651). At that time, Plaintiff apparently had not been taking Neurontin, Keppra, or Klonopin (Tr. 29, referring to Tr. 649; *see also* Tr. 30).

In addition, Plaintiff reported in July 2010 that she recently forgot to take her medication and "had an aura," which sometimes occurred prior to seizures (Tr. 565). Further, Plaintiff admitted at the hearing that she did not consistently comply with her prescribed treatment (Tr. 52; *see also* Tr. 284).

With respect to the element of Listing 11.02 requiring nocturnal episodes manifesting residuals which interfere significantly with activity during the day, the ALJ found that Plaintiff had only mild restrictions in her activities of daily living (Tr. 26). **Plaintiff does not challenge this finding.**

(Document No. 16, p.5).

Defendant further argues, as acknowledged by Plaintiff, that "the ALJ explicitly states that he considered Listing 11.02 (Tr. 24) and that his finding that Plaintiff did not meet or equal that Listing is consistent with an opinion provided by a state agency doctor (*id.*)." (Document No. 16, p.6). Moreover, Defendant asserts that the state agency doctor explicitly considered Listing 11.02, and that the ALJ was entitled to rely on that opinion. Id. (citing Tr. 105, 111; 20 CFR § 416.927(e)(2)(i)).

Next, Defendant asserts that the facts of the instant case and the <u>Radford</u> decision are materially different. <u>Id.</u> Defendant notes that in <u>Radford</u>, "the Court emphasized that the adjudicator 'summarily concluded' that the claimant did not meet the pertinent Listing and that the decision was 'devoid of reasoning' supporting that conclusion." <u>Id.</u> (citing <u>Radford</u>, 734 F.3d at 295). Here, in sharp contrast Defendant contends, "the ALJ explicitly marshals substantial evidence supporting his conclusion that Plaintiff failed to sustain her burden of establishing all elements of Listing 11.02." <u>Id.</u> (citing Tr. 28-29); <u>see also</u>, <u>Justice v. Colvin</u>, 2014 WL 3667603, at *7 (E.D.N.C. June 11, 2014) <u>adopted by</u> 2014 WL 3667744 (E.D.N.C. July 22, 2014). Defendant further asserts that the location of the ALJ's analysis of Plaintiff's seizures does not support remand; rather, the "ALJ's decision must be read as a whole." ((Document No. 16, p.7) (citing <u>Justice</u>, 2014 WL 3667603, at *6).

Finally, Defendant discusses the frequency of Plaintiff's seizures, and observes that in addition to Plaintiff's citations to treatment notes reflecting seizures occurring more frequently than once a month, even with compliance to treatment – there is also "substantial evidence that Plaintiff's seizures did not occur more frequently than once a month, particularly when she complied with her prescribed treatment." (Document No. 16, p.7) (citing Tr. 52, 284, 561, 565 567, 600, 607, 627, 649). Defendant emphasizes that the ALJ explicitly acknowledges this conflict in the evidence. <u>Id.</u> (citing Tr. 28-29). In conclusion, Defendant asserts that it is the province of the ALJ to determine the credibility of the Plaintiff's allegations, and to resolve conflicts in the evidence. (Document No. 16, p.8) (citing <u>Hays</u>, 907 F.2d at 1456; <u>Hancock</u>, 667 F.3d at 476).

"Plaintiff's Response …" addresses three main points. (Document No. 18). First, Plaintiff argues that the ALJ's decision is deficient because, as with <u>Radford</u>, "the ALJ ignored

all of the positive findings pertaining to the Listing and thus did not properly analyze the facts." (Document No. 18, p.1) (citing <u>Radford</u>, 734 F.3d at 295-96). Plaintiff contends that the ALJ had "a duty to develop and thoroughly analyze arguments both for and against granting benefits." (Document No. 18, pp.1-2) (citing <u>Sims v. Apfel</u>, 530 U.S. 103 (2000)).

Next, Plaintiff argues that Defendant "wrongly asserts that the ALJ was allowed to rely on the opinions of state agency doctors for his listing analysis." (Document No. 18, p.2) (citing <u>Radford</u>, 734 F.3d at 295-96).

Finally, Plaintiff asserts that "Defendant's citation to *Justice* is inapposite." <u>Id.</u> Plaintiff contends that in contrast to the circumstances underlying <u>Justice</u>, Plaintiff here specifically argued error regarding the Listing, and pointed to evidence of all the requisite criteria. <u>Id.</u> Plaintiff re-asserts that despite Defendant's arguments, the ALJ did not consider objective evidence both for and against Plaintiff meeting Listing 11.02. <u>Id.</u>

## B. Analysis

After careful review of all the parties' arguments, the record, and applicable authority, the undersigned is not persuaded that the ALJ committed any error requiring reversal or remand. Rather, it appears that the ALJ fully considered the medical records and the hearing testimony, and then reached a determination supported by substantial evidence. The undersigned observes, as the parties and the ALJ also seem to acknowledge, that there are conflicts in the evidence such that *some* evidence certainly suggests a finding of disability might be appropriate. However, the ALJ's decision indicates that he thoroughly reviewed all the pertinent evidence, and reached his decision after weighing the evidence and considering those conflicts. It is well-established that it is not for the Court to re-weigh the evidence, or resolve inconsistencies in the evidence, even if the Court might have reached a different conclusion.

Although the undersigned would tend to agree that the underlying ALJ decision is not a model of clarity, regarding application of the criteria of Listing 11.02, the undersigned is not persuaded that the decision requires remand. In contrast to Radford, the undersigned finds that the ALJ here provided sufficient explanation and did not "summarily conclude" without considering the requirements of Listing 11.02. See Radford, 734 F.3d at 295-96. The undersigned is also not persuaded that "the ALJ ignored all of the positive findings pertaining to the Listing and thus did not properly analyze the facts concerning the listing criteria." (Document No. 18, p.1).

As noted above, the ALJ clearly stated that he considered Listing 11.02 and applied the medical evidence to that listing, and that his finding was "consistent with that of the state agency expert medical consultant" who also found no listing had been met or equaled. (Tr. 24). Absent evidence to the contrary, we are to take the ALJ at his word. See Reid v. Commissioner of Social Security, --- F.3d ----, 2014 WL 4555249, at *4 (4th Cir. Sept. 16, 2014). Moreover, the decision itself shows that the ALJ considered Plaintiff's epilepsy/seizures, found this a severe impairment, and exhaustively reviewed the record in deciding how Plaintiff's seizures impacted her. See (Tr. 25-26, 28-30) (citing, inter alia, Tr. 283, 321, 421, 423, 434, 436-443, 445, 514, 561, 563, 567, 573-574, 578, 600-605, 619, 623-624, 649, 651, 671, 681, 687, 689). There is not a "rigid requirement that the ALJ refer to every piece of evidence in his decision." Reid, 2014 WL 4555249, at *4 (citing Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005).

To the extent Plaintiff suggests the ALJ erred by relying on the opinions of state agency doctors, her argument is without merit. See (Document No. 18, p.2) (citing Radford, F.3d at 295-96). It appears to the undersigned that Radford specifically holds that an ALJ cannot exclusively rely on state medical opinions to constitute substantial evidence. Radford, F.3d at

295.  In this case, the ALJ noted that his findings were *consistent with* the state agency consultants, not that the findings exclusively relied on them.  (Tr. 24).  As shown above, the ALJ also went on to describe and cite substantial evidence in the record that informed his own findings.  (Tr. 25-26, 28-30).

Plaintiff repeatedly argues that the ALJ did not mention or consider evidence that would support a disability finding, including evidence that she experienced seizures even when she was compliant with her medication.  (Document No. 18, pp.2-3) (citing Document No. 10, pp.5-6).  The undersigned is not convinced that the ALJ failed to consider such evidence.  Moreover, it appears that most of the evidence Plaintiff relies upon to make this point is inconsistent with other evidence in the record, and/or is not wholly supportive of Plaintiff's argument.

For example, Plaintiff asserts that "she continued to experience daily seizures in July of 2010 despite taking Keppra as prescribed.  (Document No. 10, p.6) (citing Tr. 594).  Although the cited medical record from Caldwell FamilyCare Center does describe Plaintiff as "having 'small' seizures – daily," Plaintiff fails to note that the very same record states that she was "having seizures as the medication wears off."  (Tr. 594-595).  In addition, the July 9, 2010 report from Caldwell FamilyCare Center is inconsistent with the July 29, 2010 report from Neurology Associates, P.A.  Compare (Tr. 594) and (Tr. 565-567).  On July 22, 2010, Plaintiff was seen by Neurology Associates, P.A. "for follow up of seizures."  Just a few weeks after reporting to Dr. Bowen at Caldwell FamilyCare Center that she was having daily seizures, Plaintiff apparently reported to another provider at Neurology Associates, P.A. that her **"[l]ast seizure was on 5/28/2010**, although she had an aura recently when she **forgot to take her medication**."  (Tr. 594, 565) (emphasis added).  The July 29, 2010 report further provides:

> She feels the seizures symptoms are improving with treatment. Seizure frequency is increased by stress. The seizure frequency is decreased by taking medication regularly. . . .
>
> Ms. Milam **has seizures that are controlled on Keppra, Neurontin, and Klonopin. She is to continue this regimen**.

(Tr. 565, 567) (emphasis added).

Plaintiff further contends that Plaintiff's "October 2010 record also noted continued seizures despite medication compliance." (Document No. 10, p.6) (citing 561-563). The undersigned notes that the cited record specifically states:

> The last seizure occurred 1 month ago. It was associated with venipuncture. Spring had 3-4 seizures since her last visit. Seizure frequency is increased by stress. . . .
>
> Ms. Milam has seizures which, to some extent, sound anxiety driven. . . . She will **go back on** maintenance Klonopin at 0.5-1 mg nightly, and increase the Neurontin to 800 mg [], and see how she does with this, and see me in 2 months.

(Tr. 561, 563) (emphasis added). This evidence, cited by Plaintiff, is inconsistent with her argument that she was either having daily seizures, or 2-3 seizures per week. (Document No. 10, p.6). Rather, it suggests that she was having seizures about once a month, and that the most recent seizure had been triggered by having blood drawn. (Tr. 561-563). It is unclear why Plaintiff had to be instructed to *go back on* Klonopin on October 20, 2010, after she had been directed to continue with Klonopin on July 22, 2010. (Tr. 566, 563). See also (Tr. 592 ("take 1 tablet (1MG) [Klonopin] by ORAL route daily").

Finally, the undersigned observes that the ALJ specifically cited portions of the record that Plaintiff now suggests he ignored. Compare (Document No. 10, pp.5-6) and (Tr. 28-29) (citing 561-563, 573-578, 604-605, 619, 649-651, 654-655). The undersigned further observes that there is some duplication in the Transcript of Proceedings which may have caused some

confusion, such that one party cited one set of page numbers for a document, while another party cited a different set of page numbers for the very same document.  <u>See</u> (Tr. 597-599 and 619-621).  For example, Plaintiff argues that she was having seizures about twice per week, while compliant on her medications.  (Document No. 10, p.6) (citing Tr. 597-99 [Exhibit 19F/10-12]).  The ALJ cites this very same record, only in a different place.  <u>See</u> (Tr. 29) (citing Exhibit 23F/1 [a/k/a Tr. 619]).

Based on the foregoing, it appears to the undersigned that the ALJ here properly evaluated Plaintiff's epilepsy/seizures, and properly assessed Plaintiff's credibility and RFC.  In this instance, that decision required consideration of numerous medical records, many of which reveal inconsistencies.  It was the ALJ's duty to weigh all the evidence and to resolve any conflicts, and the undersigned finds no indication of error or failure to follow correct legal standards in the ALJ's determination.

## IV.    CONCLUSION

In short, the undersigned finds that there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," and thus substantial evidence supports the Commissioner's decision.  <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971);  <u>Johnson v. Barnhart</u>, 434 F.3d 650, 653 (4th Cir. 2005).  As such, the undersigned will recommend that the Commissioner's decision be affirmed.

## V.    RECOMMENDATION

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that: Plaintiff's "Motion For Judgment On The Pleadings" (Document No. 9) be **DENIED**; Defendant's "Motion For Summary Judgment" (Document No. 15) be **GRANTED**;  and the Commissioner's determination be **AFFIRMED**.

## VI. TIME FOR OBJECTIONS

The parties are hereby advised that pursuant to 28 U.S.C. § 636(b)(1)(C), and Rule 72 of the Federal Rules of Civil Procedure, written objections to the proposed findings of fact, conclusions of law, and recommendation contained herein may be filed **within fourteen (14) days** of service of same. Responses to objections may be filed within fourteen (14) days after service of the objections. Fed.R.Civ.P. 72(b)(2). Failure to file objections to this Memorandum and Recommendation with the District Court constitutes a waiver of the right to de novo review by the District Court. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005). Moreover, failure to file timely objections will preclude the parties from raising such objections on appeal. Diamond, 416 F.3d at 316; Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Snyder v. Ridenhour, 889 F.2d 1363, 1365 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 147-48 (1985), reh'g denied, 474 U.S. 1111 (1986).

**IT IS SO RECOMMENDED**.

Signed: September 25, 2014

David C. Keesler
United States Magistrate Judge